UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| FLAVIO GARCIA ROJAS,<br><br>　　　　　Petitioner,<br><br>　v.<br><br><br>RANDY BLADES,<br><br>　　　　　Respondent. | Case No. 1:09-cv-00005-EJL<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is Respondent's Motion for Summary Judgment, filed on May 23, 2011 (Dkt. 26.) The Clerk of Court sent Petitioner the Notice to Pro Se Litigants of the Summary Judgment Rule Requirements (Dkt. 27.) The Court has given Petitioner additional time to file a response (Dkt. 28), but Petitioner has failed to do so. Accordingly, having reviewed the state court record and briefing of Respondent, the Court now considers Respondent's Motion for Summary Judgment.

## PROCEDURAL BACKGROUND

Petitioner Flavio Rojas, his girlfriend (Ms. Juarez), and Ms. Juarez's daughter (Erika, the victim) lived together during the incidents of lewd conduct that underlie Petitioner's conviction. The incidents occurred during the time span of May 2001 through

April 2003. Erika reported the incidents to her mother and to a neighbor, Desiree Hruska. The incidents stopped when Ms. Juarez installed a lock on Erika's door. However, when Erika failed to lock her door one evening, another incident occurred.

After an investigation, an indictment was filed charging Petitioner with two counts of lewd conduct with a minor under sixteen and one count of sexual abuse of a child under the age of 16, and charging Ms. Juarez with failing to report abuse or neglect. (State's Lodging A-1 at 6-9.) An amended indictment was filed during trial, changing some of the dates of the alleged occurrences. (*Id.* at 74-77.)

Petitioner and Ms. Juarez retained a private attorney, Jon Cox, and they proceeded to jury trial together. (State's Lodgings A-1 to A-5.) Petitioner testified at the trial, but Ms. Juarez did not. Petitioner was found guilty of one count of lewd conduct with a minor under sixteen and one count of sexual abuse of a child under the age of 16, and Ms. Juarez was found guilty of failing to report abuse or neglect. (*Id.* at 83-86.)

Petitioner's judgment of conviction was entered on July 16, 2004. (State's Lodging A-1 at 105-07.) He was sentenced to nine years fixed with nine years indeterminate on the first count, and five years fixed with five years indeterminate on the second count, with the sentences running concurrently. (*Id.*)

Petitioner filed a direct appeal, but it was dismissed pursuant to the stipulation of the parties. (State's Lodgings B-2 to B-4.) Petitioner alleges that he did not receive any information from appellate counsel about why the case was dismissed.

Petitioner also pursued a motion for reduction of sentence, which was filed on

**MEMORANDUM DECISION AND ORDER - 2**

November 16, 2004. (See reference in State's Supplemental Lodging, Dkt. 15 at 2.) That motion was denied on January 11, 2005. (*Id.*)

Petitioner filed a post-conviction petition, which was denied by the state district court after an evidentiary hearing. (State's Lodgings C-1 to C-3.) Petitioner filed an appeal that was heard by the Idaho Court of Appeals. (State's Lodgings D-1 to D-4.) The Idaho Court of Appeals affirmed dismissal of the post-conviction action, although part of the opinion relies upon a mistake of fact–that the co-defendants were tried separately–when, in fact, they were tried together. (State's Lodging D-4 at 6-7.) The mistake of fact arises from Petitioner's failure to augment the appellate record with the trial transcript; the only record before the appellate courts was the post-conviction record. (*Id.* at 1n.1.)

A petition for review and a memorandum were filed with the Idaho Supreme Court, wherein the mistake of fact was not addressed (State's Lodgings D-5, D-6.) The petition for review was subsequently denied by the Idaho Supreme Court. (State's Lodging D-7.) Petitioner alleges that his appellate counsel never sent him a copy of the court's decision when the case was completed.

Petitioner also pursued a second post-conviction action in the state district court (State's Lodging E-1), during which time this federal case was stayed. When that action concluded (State's Supplemental Lodging, Dkt. 15), this case was re-opened. Respondent's Motion for Summary Judgment seeking denial or dismissal of all of Petitioner's claims is now at issue.

**MEMORANDUM DECISION AND ORDER - 3**

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriately granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Federal Rules of Civil Procedure apply to habeas corpus actions except where application of the rules would be inconsistent with established habeas practice and procedure. Rule 11, Rules Governing Section 2254 Cases. Accordingly, summary judgment motions are appropriate in habeas corpus proceedings where there are no genuine disputes as to any material facts and the moving party is entitled to judgment as a matter of law. *Blackledge v. Allison*, 431 U.S. 63, 80-81 (1977). Judicial notice will be taken of the court docket in the underlying state court proceedings. Fed. R. Evid. 201(b); *Dawson v Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006).

Petitioner brings three claims in his Petition for Writ of Habeas Corpus. Respondent argues that the second and third claim are procedurally defaulted, an issue that the Court will address first, because procedural default is a preliminary issue. Respondent also argues that the first claim is subject to dismissal on the merits, which the Court will address last.

## PROCEDURAL DEFAULT: CLAIMS TWO AND THREE

Petitioner's second claim is that his trial attorney was ineffective under the Sixth, Fifth, and Fourteenth Amendments "for failing to call numerous key witnesses to testify" on Petitioner's behalf at trial. (Dkt. 1 at 2.) Petitioner's third claim is that his trial attorney was ineffective and he was denied his right to due process when trial counsel failed to advise Petitioner of his right to refuse a psychosexual evaluation at sentencing. (Dkt. 1 at 3.) Respondent argues that both of these claims are procedurally defaulted and subject to dismissal.

**1.**     *Standard of Law*

Habeas corpus law requires that a petitioner "exhaust" his state court remedies before pursuing a claim in a federal habeas petition. 28 U.S.C. § 2254(b). To exhaust a claim, a habeas petitioner must fairly present it to the highest state court for review in the manner prescribed by state law. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Unless a petitioner has exhausted his state court remedies relative to a particular claim, a federal district court may deny the claim on its merits, but it cannot otherwise grant relief on unexhausted claims. 28 U.S.C. § 2254(b). The petitioner can satisfy the exhaustion requirement by showing that (1) he has "fairly presented" his federal claim to the highest state court with jurisdiction to consider it, or (2) that he did not present the claim to the highest state court, but no state court remedy is available when he arrives in federal court (improper exhaustion). *Johnson v. Zenon*, 88 F.3d 828, 829 (9th Cir. 1996) (citations omitted).

**MEMORANDUM DECISION AND ORDER - 5**

To exhaust a habeas claim properly, a habeas petitioner must "invok[e] one complete round of the State's established appellate review process," *O'Sullivan v. Boerckel*, 526 U.S. at 845, giving the state courts a full and fair opportunity to correct the alleged constitutional error at each level of appellate review. *See Baldwin v. Reese*, 541 U.S. 27, 29 (2004). Improperly exhausted claims are deemed "procedurally defaulted." Procedurally defaulted claims include those within the following circumstances: (1) when a petitioner has *completely failed* to raise a particular claim before the Idaho courts, and it is now too late to do so; (2) when a petitioner has raised a claim, but has failed to fully and fairly present it as a *federal* claim to the Idaho courts, and it is now too late to do so; or (3) when the Idaho courts have rejected a claim on an independent and adequate state procedural ground. *See Martinez v. Klauser*, 266 F.3d 1091, 1093-94 (9th Cir. 2001) (quoting *Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994)).

**2.**      ***Second Claim***

Respondent argues that Petitioner did not raise in the Idaho Supreme Court the claim that trial counsel failed to call numerous key witnesses to testify at trial. The only claim raised in the post-conviction appeal brief was an ineffective assistance of counsel claim based on a conflict of interest–that trial counsel, Jon Cox, represented both Petitioner and Ms. Juarez. One of the factual bases for the conflict of interest claim was the allegation that counsel allegedly failed to call key witnesses that would have been helpful to Petitioner's case (State's Lodging D-1 at 15-17), but Petitioner did not present that issue as an independent claim to the Idaho Supreme Court. Accordingly, he cannot do

**MEMORANDUM DECISION AND ORDER - 6**

so here. Thus, the Court concludes that this claim is procedurally defaulted.

**3.      *Third Claim***

Respondent argues that Petitioner raised the third claim in a successive post-conviction action, but the claim was dismissed by the state district court because it should have been raised in the first post-conviction action. Petitioner did not appeal dismissal of the claim (State's Lodging E-1 through E-5.) As a result, the Court finds that the third claim is procedurally defaulted, both because the state court found that it was not properly presented, and because it was never appealed.

**4.      *Exceptions to Procedural Default Rule***

If a petitioner's claim is procedurally defaulted, the federal district court cannot hear the merits of the claim unless a petitioner meets one of two exceptions: a showing of adequate legal cause for the default and prejudice arising from the default; or a showing of actual innocence, which means that a miscarriage of justice will occur if the claim is not heard in federal court. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Schlup v. Delo*, 513 U.S. 298, 329 (1995).

To show "cause" for a procedural default, a petitioner must ordinarily demonstrate that some objective factor external to the defense impeded his or his counsel's efforts to comply with the state procedural rule at issue. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To show "prejudice," a petitioner bears "the burden of showing not merely that the errors [in his proceeding] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of

**MEMORANDUM DECISION AND ORDER - 7**

constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982).

If a petitioner cannot show cause and prejudice, he can still bring the claim in a federal habeas petition if he demonstrates that failure to consider the claim will result in a "fundamental miscarriage of justice." *McCleskey v. Zant*, 499 U.S. 467, 494 (1991). A miscarriage of justice means that a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

To show a miscarriage of justice, Petitioner must make a colorable showing of factual innocence, *Herrera v. Collins*, 506 U.S. 390, 404 (1993); *Coley v. Gonzales*, 55 F.3d 1385, 1387 (9th Cir. 1995), supporting his allegations of constitutional error with new reliable evidence that was not presented at trial, *Schlup v. Delo*, 513 U.S. 298, 324 (1995). For example, types of evidence "which may establish factual innocence include credible declarations of guilt by another, *see Sawyer v. Whitley*, 505 U.S. 333, (1992), trustworthy eyewitness accounts, *see Schlup*, 513 U.S. at 331, and exculpatory scientific evidence." *Pitts v. Norris*, 85 F.3d 348, 350-51 (8th Cir. 1996).

Petitioner has failed to argue that either exception applies to excuse his procedural default. No facts supporting cause and prejudice or a miscarriage of justice are evident from the record. Accordingly, Claims Two and Three will be dismissed with prejudice.

## MERITS OF FIRST CLAIM

Petitioner's first claim is that counsel had a conflict of interest when he represented both Petitioner and Ms. Juarez. (Dkt. 1 at 2.) Because this claim was properly

**MEMORANDUM DECISION AND ORDER - 8**

exhausted, the Court reviews the merits of the claim.

**1.      Standard of Law Governing Habeas Corpus Procedure**

Federal habeas corpus relief is available for claims adjudicated on the merits in a state court judgment only when the federal court determines that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). However, under § 2254(d), as amended by the Anti-terrorism and Effective Death Penalty Act (AEDPA), relief is further limited to instances where the state-court adjudication of the merits:

> 1.      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2.      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

In other words, the writ can be granted only when the petitioner shows a federal violation, as specified in § 2254(a), *and* either a "contrary" or unreasonable application of federal law *or* an unreasonable determination of the facts by the state court, as specified in § 2254(d). *See, e.g., Ben-Yisrayl v. Buss*, 540 F.3d 542, 550 (7th Cir. 2008), *cert. denied*, 129 S. Ct. 2890 (2009) ("Despite a conclusion that the Indiana Supreme Court's finding was unreasonable, Ben-Yisrayl still must still establish that he is entitled to habeas relief"); *Harrison v. McBride*, 428 F.3d 652, 665 (7th Cir. 2005) ("[E]ven when the AEDPA standard does not apply—either because the state court's opinion was unreasonable or because the

**MEMORANDUM DECISION AND ORDER - 9**

state judiciary did not address the constitutional claim—[a] prisoner still must establish an entitlement to the relief he seeks").

In this case, there is an obvious factual error underlying the state court opinion. The United States Supreme Court has determined that a clear factual error "reflects 'an unreasonable determination of the facts'" under § 2254(d)). *Wiggins v. Smith*, 539 U.S. 510, 528 (2003); *see also Taylor v. Maddox*, 366 F.3d 992 (9th Cir. 2004) ("[W]here the state courts plainly misapprehend or misstate the record in making their findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim, that misapprehension can fatally undermine the fact-finding process, rendering the resulting factual finding unreasonable.") *Id.* at 1001 (citing *Wiggins*). When a state court adjudication was based on an unreasonable determination of fact, the reviewing court is to "consider the petitioner's related claim de novo." *Maxwell v. Roe*, 628 F.3d 486, 494-95 (9th Cir. 2010). *See also Jones v. Walker*, 540 F.3d 1277 (11th Cir. 2008) (*en banc*).[1]

---

[1] The *Jones* Court reasoned:

[W]hen a state court's adjudication of a habeas claim results in a decision that is based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding, this Court is not bound to defer to unreasonably-found facts or to the legal conclusions that flow from them.... Because the Georgia Supreme Court unreasonably determined the facts relevant to Jones' Sixth Amendment claim, we do not owe the state court's findings deference under AEDPA. We therefore apply the pre-AEDPA de novo standard of review to Jones' habeas claims. "

540 F.3d at 1288 n.5 (quotations, citations, and alterations omitted).

**MEMORANDUM DECISION AND ORDER - 10**

2.      **Standard of Law Governing Merits**

A criminal defendant has the right to be represented by conflict-free counsel under the Sixth Amendment. *Wood v. Georgia*, 450 U.S. 261, 271 (1981). A "possible conflict of interest" is created "that could prejudice either or both clients" when the same counsel represent two defendants in criminal actions arising from the same set of facts. *Burger v. Kemp*, 483 U.S. 776 (U.S. 1987). However, it is settled that "[r]equiring or permitting a single attorney to represent codefendants, often referred to as joint representation, is not per se violative of constitutional guarantees of effective assistance of counsel." *Id*. at 783 (quoting *Holloway v. Arkansas*, 435 U.S. 475, 482 (1978)). To the contrary, "[i]n many cases, a common defense gives strength against a common attack." *Id*. (internal citations and quotation marks omitted).

While the provision of separate trials for jointly-represented co-defendants "significantly reduce[s] the potential for a divergence of their interests," *Cuyler v. Sullivan*, 446 U.S. 335, 347 (1980), the United States Supreme Court has never held that separate trials are required to avoid a conflict of interest.

The United States Supreme Court has made it clear that the mere "possibility of conflict is insufficient to impugn a criminal conviction." *Cuyler*, 446 U.S. at 350. When a conflict is shown, prejudice is presumed only when: (1) "the defendant demonstrates that counsel actively represented conflicting interests"; and (2) "an actual conflict of interest adversely affected his lawyer's

**MEMORANDUM DECISION AND ORDER - 11**

performance." *Burger*, 483 U.S. at 783 (quoting *Strickland v. Washington*, 466

U.S. 668, 692 (1984) (citation and quotations marks omitted), and citing *Cuyler*,

446 U.S. at 348).

       In *Mickens v. Taylor*, 535 U.S. 162, 172-73 (2002), the Supreme Court

rejected the proposed rule of automatic reversal of a conviction where there existed

a conflict that did not affect counsel's performance. Instead, that Court emphasized

that "an actual conflict of interest" meant precisely a conflict that affected

counsel's performance–as opposed to a mere theoretical division of loyalties." *Id.*

at 171.

       Stated another way, a defendant who brings an attorney conflict-of-interest

claim must "show that potential conflicts impermissibly imperil[ed] his right to a

fair trial." *Cuyler*, 446 U.S. at 348 (internal citations omitted). The *Cuyler* Court

provided the following example of a conflict of interest that adversely affected the

defendant's trial:

> In *Glasser v. United States*, [315 U.S. 60 (1942)], for example, the
> record showed that defense counsel failed to cross-examine a
> prosecution witness whose testimony linked Glasser with the crime
> and failed to resist the presentation of arguably inadmissible
> evidence. *Id.*, at 72-75, 62 S.Ct. at 465-467. The Court found that
> both omissions resulted from counsel's desire to diminish the jury's
> perception of a codefendant's guilt. Indeed, the evidence of
> counsel's "struggle to serve two masters [could not] seriously be
> doubted." *Id.*, at 75, 62 S.Ct., at 467. Since this actual conflict of
> interest impaired Glasser's defense, the Court reversed his
> conviction.

**MEMORANDUM DECISION AND ORDER - 12**

446 U.S. at 348-49.[2]

## 3.      Discussion

In Petitioner's post-conviction appeal case, the Idaho Court of Appeals misapprehended a fact. As noted above, the Idaho Court of Appeals mistakenly believed that Petitioner and Ms. Juarez were not tried together, when, in fact, they had one joint trial. (State's Lodging D-4 at 1, 6.) As the standard of law demands, when a misapprehension of a material fact in the state court record by the state reviewing court is clear, it amounts to an unreasonable finding of fact under § 2254(d)(2), and, therefore, the Court reviews the legal question de novo in light of the true facts presented in the state court record.

The Court will first look at the question of whether there was a possible conflict of interest between Petitioner and Ms. Juarez. While they both were charged with crimes arising from the same set of facts–one acting improperly, and the other refusing to report the crime–each could have provided evidence to damage the other's defense. The Court concludes, therefore, that a theoretical conflict of interest existed.

The second question is whether the joint representation actually affected the adequacy of trial counsel's representation of Petitioner. In other words, what did trial counsel do, and were the actions taken the result of the attorney's conflicted

---

[2] *Glasser* was later superseded on other grounds not relevant here. *See* Fed. R. Evid. 104; *Bourjaily v. United States*, 483 U.S. 171 (1987).

**MEMORANDUM DECISION AND ORDER - 13**

loyalty?

The relationships existing among Petitioner, Ms. Juarez, and Erika (the child/victim) are important to the second question of what counsel did and why. The record shows that the defendants put on a united front and pursued the defense that Erika–Petitioner's step-daughter and Ms. Juarez's daughter–lied about having been sexually molested by Petitioner. Petitioner and Ms. Juarez had a husband-wife type relationship that spanned approximately 10 years, while Erika, who had been raised by her aunt in another state, had only recently come to live with her mother (Ms. Juarez) and Petitioner. After the incidents, Erika returned to live with her aunt, who was in the process of adopting her at the time of trial. (A-3 at 128.) In summary, the facts showed that Petitioner and Ms. Juarez had a strong and lasting relationship with each other, while Erika had a short, temporary relationship with Ms. Juarez and Petitioner.

Both defendants chose to retain and proceed to trial with the same counsel.[3] It is undisputed that Ms. Juarez wanted to testify on behalf of herself and Petitioner. Counsel advised her not to testify on behalf of herself or Petitioner. (State's Lodgings D-4 at 5; C-2 at 5, 20-21, 45-46.) In the Affidavit of post-

---

[3] Ms. Juarez testified at the post-conviction hearing that trial counsel advised her of the potential conflict of interest, that she understood the conflict, and that she chose to go forward in the face of such knowledge. (State's Lodging C-2 at 18-19.) Rojas testified at the post-conviction hearing, but his testimony did not reveal whether he was advised of and waived the potential conflict of interest. (*Id.* at 36-41.) Because it is unknown what Rojas was told and what he waived, the Court does not consider this information or lack of it in its analysis.

**MEMORANDUM DECISION AND ORDER - 14**

conviction counsel Dennis Sallaz, he reported that Ms. Juarez said that trial

counsel advised against testifying for herself and Petitioner because she would

have no credibility, because she was the wife and a co-defendant. (State's Exhibit

C-1 at 42.)

Particularly at issue is whether counsel's advice to Ms. Juarez to refrain

from testifying for Petitioner was really for the benefit of Ms. Juarez's case and

whether that advice adversely affected trial counsel's performance in Petitioner's

case.[4] In the post-conviction application evidentiary hearing, *both* the trial attorney

*and* Ms. Juarez testified that the trial attorney told Ms. Juarez not to testify on

Petitioner's behalf because it was not in *Petitioner's* best interest. (State's

Lodgings D-4 at 5; C-2 at 5, 20-21, 45-46.) The trial attorney specifically testified:

> Q.     The other incidents of where a child may have lied, if
>        discussed with you, would you have decided whether
>        that type of evidence would have been admissible or
>        not at trial before you tried to admit it at trial?
>
> A.     Well, I mean, you're always trying to make a
>        determination of whether or not you're going to be
>        objected to and do you want to bring up the idea of the
>        mother calling the daughter a liar. I mean, I thought
>        that was fraught with somewhat potentially negative
>        against both the parents, but I knew the issue was
>        going to be discussed. But I didn't–I don't know if I've

---

[4] For example, whether Ms. Juarez actually "reported" the alleged child abuse to authorities was at the heart of her own criminal case. Had she chosen to testify, the cross-examination of her may have revealed that she did not, in fact, report the child abuse–destroying her defense. Counsel had planned to show the "reporting" by calling Desiree Hruska, Ms. Juarez's best friend, who testified that Ms. Hruska called the Department of Health and Welfare, and Ms. Juarez did, in fact, speak to personnel at that time. (A-3 at 149; C-2 at 45.)

**MEMORANDUM DECISION AND ORDER - 15**

answered your question or not.

Q.    Whenever a client meets with you and tells you their
      array of information, do you have to make a judgment
      about what type of information is admissible or not
      admissible, just based on what the content is?

A.    Obviously.

Q.    And so where your client's been provided [sic] information to
      you that would have been inadmissible, at any rate, just
      simply about previous lies, would you take that into
      consideration as a trial strategy as if you would even attempt
      to introduce that?

A.    Well, I typically don't try to introduce evidence that I know if
      going to be objected to and potentially sustained. Again, I
      thought the area of her past lies was going to be covered, so I
      don't know that I wanted to beat a dead horse about that.

(State's Lodging C-2, at 52-53.)

Counsel's testimony that he thought the testimony of the mother could have

been construed in a negative way by the jury is reasonable and appropriate in the

face of the particular relationships described above. The co-defendants not only

had a long, strong history together that the victim did not share; but, after the

incidents, the victim's relationship with the co-defendants was severed, and the co-

defendants continued their relationship. The jury could have attributed a bias,

prejudice, or lack of "credibility" to Ms. Juarez and expanded that negative view to

include Petitioner as Ms. Juarez's close family member, had Ms. Juarez testified in

favor of Petitioner and against her own daughter.

Counsel's decision did not adversely affect his performance in Petitioner's

**MEMORANDUM DECISION AND ORDER - 16**

case. Rather, counsel determined that there were better ways of introducing the evidence that the victim had a reputation for being untruthful, and effectively introduced that evidence at trial.

Ms. Hruska, the neighbor, testified that, when the child reported the incidents, Ms. Hruska had a hard time believing the child because "she's been lying a lot lately." (*Id*. at 162.) Further, the Court allowed Hruska's testimony to stand, over the State's objection, that: "I have witnessed her [the child] lying to her mother." (*Id*. at 163.)

In addition, trial counsel skillfully cross-examined the child about her reputation for untruthfulness:

> Q.   Have you ever lied about something as important as, say, something about suicide?
>
> A.   Have I ever lied about something like that? Not that–

(State's Lodging A-3 at 305.)

> Q.   Erika, do you have a reputation among your family members or friends for not being truthful about things?
>
> A.   What are you trying to say?
>
> The Court:   He is asking her if she's aware of her reputation among family members and friends?
>
> A.   Am I aware of – if people know that I'm a liar? Is that what you said?
>
> Q.   Yeah, that you have a reputation of maybe not always telling the truth?

**MEMORANDUM DECISION AND ORDER - 17**

A.     I don't know.

(*Id.* at 307-08.)

It is also evident, both from the trial transcript and from trial counsel's testimony at the post-conviction evidentiary hearing, that counsel was keenly aware that he was walking a fine line between admissible "general reputation of character" evidence and inadmissible specific "bad acts" evidence. The evidence trial counsel presented and the manner in which he handled objections show his awareness and skill in this area.

Petitioner presented testimony at the post-conviction evidentiary hearing that Ms. Juarez could have testified at trial about her daughter's instances of being untruthful, including laying foundation for school records regarding her daughter's untruthfulness. (State's Lodging C-2, pp. 5-7.) Petitioner argues that trial counsel disregarded this evidence that would have helped Petitioner's defense because counsel believed it would have harmed Ms. Juarez's defense.

To the contrary, trial counsel understood that particular instances of untruthful conduct were inadmissible to show that the victim acted in conformity with her prior conduct by presently lying about the sexual molestation. Ms. Juarez's testimony about the school records and attendant exhibits likely were inadmissible because they concerned only a particular event. The school records provided by Petitioner with his post-conviction application include a note from Ellen F. Kerstein, counselor, that addresses a suicide attempt the victim apparently

**MEMORANDUM DECISION AND ORDER - 18**

fabricated about the same time period:

> 10-8-02
>
> Erika -
>
> She said he has mood swings but does not want to kill herself.
> Erika said she was just joking when she told her friend she tried to
> kill herself. Erika said she made a bet with her cousin to tell someone
> a lie and then tell the person the truth on Halloween.
>
> 10-14-02
>
> Erika said she feels bad that she told her friend she would kill
> herself as a joke. She said she would not do that again.

(State's Lodging C-2 at 54-55.)

On October 7, 2002, a "Suicide Prevention Form" was completed by the

school regarding this incident. (*Id*. at 55.) Also on that same date, a letter regarding

referrals for possible counselors for Erika was prepared. (*Id*. at 56.) There are no

school records in the post-conviction record showing that the school was

concerned about multiple incidents of Erika lying, such that school personnel or

the school records would have pertained to admissible "general reputation for

truthfulness" evidence. Thus, Petitioner has not shown that counsel ignored either

tangible school records or Ms. Juarez's supporting testimony that would have

amounted to admissible general character evidence.

**4.      Conclusion**

Assuming that a theoretical conflict existed because of the dual

**MEMORANDUM DECISION AND ORDER - 19**

representation, it did not rise to an actual conflict of interest for Sixth Amendment purposes because there is no evidence that counsel's loyalties were divided or that his performance was otherwise affected. It is clear that counsel had a strategy and that he had reasons applicable to Petitioner (not solely Ms. Juarez) that supported his advice that Ms Juarez not testify in Petitioner's behalf. It is reasonable to think that the jury could have drawn a negative inference about both parents if the mother came right out and challenged the veracity of the daughter/victim, given the unique relationships of the involved family members. Trial counsel effectively used other witnesses and the victim herself to bring out the victim's reputation for being dishonest, without risking the damage that might have occurred if both parents would have combined against the child to attack her credibility on the stand.

The Court agrees with Respondent that Petitioner has failed to demonstrate that some plausible defense strategy or tactic might have been pursued but was not *because of* the conflict of interest. Accordingly, under a de novo standard of review, the Court concludes that federal habeas corpus relief is not warranted for failure to show that a constitutional violation occurred and failure to show that a conflict of interest impermissibly imperiled his right to a fair trial. The Petition for Writ of Habeas Corpus will be denied and dismissed with prejudice.

### REVIEW OF THE CLAIMS AND THE COURT'S DECISION
### FOR PURPOSES OF CERTIFICATE OF APPEALABILITY

**MEMORANDUM DECISION AND ORDER - 20**

In the event Petitioner files a notice of appeal from the Order and Judgment in this case, and in the interest of conserving time and resources, the Court now evaluates the claims within the Petition for suitability for issuance of a certificate of appealability (COA), which is required before a habeas corpus appeal can proceed. 28 U.S.C. § 2253(c)(1)(A); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); Rule 11(a), Rules Governing Section 2254 Cases.

A COA will issue only when a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Supreme Court has explained that, under this standard, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.*" Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal citation and punctuation omitted).

When a court has dismissed a petition or claim on procedural grounds, in addition to showing that the petition "states a valid claim of the denial of a constitutional right," as explained above, the petitioner must also show that reasonable jurists would find debatable whether the court was correct in its procedural ruling. *Slack,* 529 U.S. at 484. When a court has dismissed the petition or claim on the merits, the petitioner must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* at 484. The COA standard "requires an overview of the claims in the habeas

**MEMORANDUM DECISION AND ORDER - 21**

petition and a general assessment of their merits," but a court need not determine that the petitioner would prevail on appeal. *Miller-El*, 537 U.S. at 336.

Here, the Court has dismissed two of Petitioner's claims on procedural grounds, and denied one on the merits. The Court finds that additional briefing on the COA is not necessary. Having reviewed the record again, the Court concludes that reasonable jurists would not find debatable the Court's decision on the procedural issues and the merits of the claims raised in the Petition and that the issues presented are not adequate to deserve encouragement to proceed further. As a result, the Court declines to grant a COA on any issue or claim in this action.

If he wishes to proceed to the United States Court of Appeals for the Ninth Circuit, Petitioner must file a notice of appeal in this Court, and simultaneously file a motion for COA in the Ninth Circuit Court of Appeals, pursuant to Federal Rule of Appellate Procedure 22(b), **within thirty (30) days after entry of this Order**.

## ORDER

### IT IS ORDERED:

1.   Respondent's Motion for Summary Judgment (Dkt. 26) is GRANTED. Petitioner's case is DISMISSED with prejudice.

2.   The Court will not grant a Certificate of Appealability in this case. If Petitioner chooses to file a notice of appeal, the Clerk of Court is ordered to forward a copy of this Order, the record in this case, and

**MEMORANDUM DECISION AND ORDER - 22**

Petitioner's notice of appeal, to the United States Court of Appeals

for the Ninth Circuit.

DATED:  **February 6, 2012**



Honorable Edward J. Lodge
U. S. District Judge

**MEMORANDUM DECISION AND ORDER - 23**